## SUPREME JUDICIAL COURT

#### FOR THE COUNTY OF

## YORK.

### AUGUST TERM,

### 1822.

## LORD v. CHAMBERLAIN.

By the law as it stood prior to *Stat.* 1821, *ch.* 135, every person resident within the limits of a territorial parish, if otherwise qualified, was *ipso facto* a member of the same, unless he was regularly united as a member to some poll-parish. And on ceasing to be a member of such poll-parish, he became forthwith a member of the territorial parish within which he resided, unless such secession was colorable and fraudulent.

But by *Stat.* 1821, *ch.* 135, it seems that no person can become a member of any religious society without first obtaining its consent.

This was an action of trespass on the case against the defendant, as clerk of the first or congregational *parish* in *Lebanon*, for refusing to receive the plaintiff's vote for a moderator, at a parish meeting held *May* 8, 1820 ; and it came before the Court upon exceptions filed to the opinion of the Circuit Court of Common Pleas, and an appeal therefrom pursuant to the statute.

It was proved, at the trial in the Court below, that the town of *Lebanon* formed one parish, the bounds of which were the same with the bounds of the town : and that within the town there were two voluntary religious associations formed under the *Stat.* 1811, *ch.* 6, to one of which, called the first baptist society in *Lebanon*, the plaintiff united himself as a member in *August*, 1811, having previously for many years been a member of the congregational parish. He continued thus a member of the baptist society till *April* 24, 1820, when he obtained duplicate certificates that he had *withdrawn* from that society, their

Lord *v.* Chamberlain.

articles of association permitting him so to do; one of which certificates he lodged with the town clerk, and thereupon, claiming to have again become a member of the congregational parish, he attended a meeting thereof on the 8th of *May* following, producing the other certificate to the clerk who presided at the choice of moderator, and offering his vote, which the clerk refused to receive, and for which refusal this action was brought.

During the time in which the plaintiff professed to belong to the baptist society he had occasionally, and some of his family had always, attended the religious meetings of the congregational parish; but he had never been taxed there after his secession in 1811.

It was also proved that about the time of the plaintiff's withdrawing from the baptist society he declared that *his object was to destroy the first parish*, and to obtain their lands for the town of *Lebanon*; and that many others had agreed with him to obtain similar certificates for the same purpose. These lands were certain lands given by the original proprietors of *Lebanon* for the use of the ministry, and were partly in possession of the town, and partly in possession of the parish, claimed by both.

The Court below were of opinion that the plaintiff, on withdrawing from the baptist society in 1820, again became by operation of law a member of the congregational parish, and entitled, as such, to vote in the election of its officers;—to which opinion the defendant excepted.

*Emery* and *Hayes*, in support of the exceptions, argued that however the law may have been, prior to *Stat.* 1811, *ch.* 6, it was the object of that statute to put all religious societies on a footing of perfect equality of rights and privileges, and to designate the *certificate* as the only legal evidence of parish membership. It undoubtedly designed this evidence to apply as well to the returning to a parish once left, as to the original departure from it by joining another. In both cases the membership is to be proved by certificate from the clerk of the society *to* which the party has united himself. A different construction involves great mischief. If every town composes one parish, of which all persons are members *de facto* who do not belong to any other religious society, then such parish must lie at the

Lord *v.* Chamberlain.

mercy of all other denominations, and be obliged to submit its property and its affairs to the control of its foes, since it would have no power to prevent them from becoming members of the corporation.

The right of admitting or excluding members ought to be permitted to every corporation, as essential to its preservation and safety;—at least the right to exclude persons attempting to thrust themselves in, as in the present case, with the avowed purpose of effecting its destruction.

*Shepley* and *Burleigh*, for the plaintiff, contended that by the laws of *Massachusetts*, by which this question was to be determined, every citizen was considered as a member of the territorial parish where he lived, unless he was united, in the mode provided by statute, to some particular society commonly called a poll-parish, for the time being. Such temporary membership was only in the nature of an exception to a general rule; and the plaintiff, by leaving the baptist society, and thus ceasing to be under the exception, again became subject to the general rule as a member of the territorial parish.

Nor is this any other than the fair and legitimate operation of a principle adopted at an early period in the history of this country. Every man, of whatever communion, was compellable by law to pay taxes as a member of the parish within whose territorial limits he might happen to reside; and it was but just that he should be allowed to vote in imposing them. The evil, if it be such, of being exposed to the addition of unwelcome corporators, has always existed, and is common to towns as well as parishes. The case shews nothing more nor less than a regular application of the great principle that the right to vote and the obligation to pay taxes are reciprocal, and that in all cases the will of the majority must govern.

After this argument, which was had at the last *April* term, the cause was continued for advisement; and now the opinion of the Court was delivered as follows, by

MELLEN C. J. When a man moves into a town from some *other* town, or being resident in a town arrives at full age, he at once becomes a member of the corporation without its consent, or any other act on his part; and is subject to all the *liabilities*

and entitled to all the *privileges* of a member.  The same consequence follows when a man removes from another place into 'a *territorial parish*, or, while resident therein, arrives at full age.

If a *poll-parish* be formed within the limits of a territorial parish, a man living within those limits, or removing within them from another place, does not thereby become connected with such *poll-parish*, without being included in the act of incorporation by name, or *doing some act* expressive of his intention to become a member of the poll-parish, and not belong to the territorial parish.   The nature of this act, and the *proof of membership*, are designated by law.   Both were formerly prescribed in the acts incorporating such poll-parishes, and until the general provision on this head was made in the second section of the act of 1811, which rendered special provisions in each case unnecessary.

All such provisions, whether *general* or *special*, seem founded on the idea that unless a man belongs to a poll-parish, by its charter, or by his own election, and act afterwards, he continues to be, of course, a member of the territorial parish within the limits of which he resides.

From an examination of the act of 1811 it appears that the second section of it was intended to apply to poll-parishes or societies, corporate or unincorporate, not distinguished by territorial bounds or limits : and to provide the mode of joining any such societies and proving membership.  Because, as we have before observed, no declaration or certificate can be necessary to create or prove membership of a territorial parish.   These can be necessary only where members of a territorial parish *withdraw* from it.  Hence the section provides how persons may change their relation, and become members of any such *poll*-parish.   But it will be observed that the act neither makes provision for a person's *returning to*, or *becoming a member* of the *territorial* parish *again* ;—nor prescribes any mode by which his connexion with a poll-parish is to be dissolved, or the dissolution proved.   This was not thought necessary.  An exemption of the seceder from taxation during the time of his membership in the poll-parish was all that the legislature contemplated.

Lord *v.* Chamberlain.

When a man leaves a poll-parish, and ceases to be a member of it, the general principle of law at once places him under the jurisdiction of the territorial parish, by making him a member of it, without any other act on his part, and as effectually as if he had removed into such parish from another town;—that is to say, he is divested of his character of member of the territorial parish no longer than while he continues a member of the poll-parish. When this latter membership ceases, he instantly assumes his former character.

Let us now apply these principles to the case before us. *Lord*, until *August* 28, 1811, continued a member of the first or congregational parish in *Lebanon*, being a *territorial* parish. He then joined the first baptist society—a poll-parish—of which he continued a member till *April* 1820. He then by his own act, and by the consent of said society, as appears by the certificate of the society's committee, dissolved his connexion with it, and left such certificate with the town clerk. This was notice that he claimed the *rights*, and submitted himself to the *liabilities* of a member of the first or congregational parish, and by operation of law he then was a member of it, and had a legal right to give the vote which the defendant refused to receive;—*provided* the dissolution of the plaintiff's connection with the baptist society was in reality what it appeared to be,—that is, sincere, *bona fide*, and complete;—not fraudulent, colourable and pretended;—because fraud poisons every thing, and renders that void and ineffectual which would otherwise have its intended operation. Now on the exceptions it appears that " about " the time the plaintiff, *Lord*, obtained his certificate from the " said committee with a view of seceding from said baptist so- " ciety, he declared that his object was to *destroy said first par-* " *ish*, and obtain the *parish lands* for the benefit of the town of " *Lebanon*, and that *many others* had agreed with him to obtain " similar certificates for the *same purpose*." This is the plaintiff's own language;—it is proved that he made this declaration of his own motives, and those of many others of the first baptist society, in obtaining the certificates of secession from that society. This declaration we are bound to believe. It can have no operation as to any other member of the society; but as to the plaintiff it is an avowal of motives which prove

his conduct in the above transaction to have been colourable,—— his secession *pretended* only,—and designed as a *fraudulent* mode of obtaining the control of the ministerial lands. This renders the whole proceeding ineffectual on his part; and an attempt of this kind can never be sanctioned by a court of justice. The exception therefore of the defendant to the direction of the Court, below must prevail, and a new trial be had at the bar of this Court.

It will be observed that our statute of 1821, *ch.* 135, contains some new provisions on the subject of parishes; one of which is—" that any person may become a member of any parish or " religious society now existing, or hereafter to be created, by " *being accepted by the society of which he wishes to become a mem-* " *ber,* at a legal meeting of the same, and giving notice thereof " in writing to the clerk of the society which he is about to " leave." But as the facts of the case at bar took place before the passing of this statute, we must be governed in our decision by the statute of 1811. And the general principles laid down are to be considered as having reference to the laws as existing prior to the statute of 1821.

*New trial granted.*